**Gary KEAN, Appellant**

v.

**Michael P.W. STONE, or his successor, Secretary of the Army, United States Department of the Army, Pentagon, Washington, D.C. 20310; Colonel John Joseph, Commanding Officer, New Cumberland Army Depot, New Cumberland, PA 17070; Merit Systems Protection Board, 1120 Vermont Avenue, N.W., Washington, D.C.; U.S. Department of the Army, Pentagon, Washington, D.C. 20310**

No. 91–5944.

United States Court of Appeals, Third Circuit.

Argued May 8, 1992.

Decided June 3, 1992.

**120**

Martin R. Cohen (argued), AFGE, Bala Cynwyd, Pa., for appellant.

Sally A. Lied, Office of U.S. Atty., Harrisburg, Pa., John H. Belser (argued), U.S. Army Litigation Div., Arlington, Va., for appellees.

Before: BECKER, NYGAARD and ROTH, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant Gary Kean was the prevailing party in a discrimination action brought before the Merit Systems Protection Board (MSPB) and requested attorney fees, calculated at the market rate under 5 U.S.C. § 7701(g). The district court granted summary judgment against Kean and awarded attorney fees calculated at cost-plus-overhead because Kean was represented by a salaried union attorney. The sole issue on appeal is whether when one prevails in a discrimination action, represented by a salaried union attorney before the Board, one is entitled to attorney fees calculated at the market rate. We conclude that one is and will reverse and remand.

### I.

We will not relate the complex procedural history of this case because it is, for the most part, irrelevant to the narrow issue before us. For a complete procedural history, see *Kean v. Stone*, 926 F.2d 276 (3d Cir.1991) (*Kean I*). The facts pertinent to our decision are undisputed.

Kean, a civilian Army employee, was fired from his job because of an alcoholism related handicap and brought an action before the Board. Actions before the Board are generally classified as either "pure" or "mixed." A pure case is when the employee alleges harm from an improper nondiscriminatory personnel decision. A mixed case, on the other hand, is when the employee alleges such a personnel decision resulted in part from prohibited discrimination. Since Kean alleged both an improper personnel action and discriminatory discharge, his was a "mixed" case. See generally *Id.* at 282–83 (discussing the allocation of jurisdiction between the Federal Circuit and other federal courts over MSPB cases).

Kean was represented by an attorney from the legal staff of his union, the American Federation of Government Employees

(AFGE). The AFGE is a nonprofit organization representing federal employees pursuant to 5 U.S.C. §§ 7101 et seq. Its General Counsel is a member of the District of Columbia bar, who handles its legal matters and controls the AFGE Legal Representation Fund. All attorney fees recovered in this action will go into the Fund. The Fund is maintained in a separate bank account and segregated from other AFGE funds, is not used to support litigation when the AFGE is a defendant, and is used only to support positive or affirmative litigation brought on behalf of union members or other federal employees to advance or enforce their constitutional and statutory rights.

After protracted administrative reviews before the Board and the Equal Employment Opportunity Commission, the Board found for Kean and awarded attorney fees under 5 U.S.C. § 7701(g). That statute provides:

> If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(k)).

(There is no dispute that Kean is the "prevailing party," and the decision in his favor was "based on a finding of discrimination" prohibited by Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.) Section 2000e–5(k), better known as Title VII, provides: "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs."

Kean contended before the Board that he is entitled to attorney fees calculated at the then prevailing market rate: $100 per hour for the first 30 hours, $125 per hour for the last 1.5 hours, for a total of $3187.50. The Board rejected the market rate calculation, noting its longstanding cost-plus-overhead method for calculating attorney fees. It

derived authority from decisions of the Court of Appeals for the Federal Circuit, which support its method of calculation. Thus, it awarded $1134 based upon the cost-plus-overhead method.

Kean filed a petition for review with both the Court of Appeals for the Federal Circuit [1] and the District Court for the Middle District of Pennsylvania. The district court dismissed the appeal for lack of subject matter jurisdiction, but we reversed and remanded. *Kean I*, 926 F.2d at 289. On remand the district court affirmed the Board's fee award. Kean appeals, still contending that he is entitled to market rate fees.

■ Ordinarily we review the district court's fee award for an abuse of discretion. *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir.1990). But here, the question is whether the district court applied the correct legal standard, and our review is plenary. Id.

## II.

The issue of whether a salaried union attorney is entitled to attorney fees calculated at the market rate and paid to a segregated litigation fund is new to us. In denying market rate fees, the district court reasoned that granting such fees to a salaried union attorney violates canons of ethical conduct. It reasoned from decisions of the Court of Appeals for the Federal Circuit, which in turn relied upon *National Treasury Employees Union v. Department of the Treasury*, 656 F.2d 848 (D.C.Cir.1981) (*NTEU*).

In *NTEU* a salaried union attorney sought attorney fees under the fee shifting provisions of the Privacy Act, 5 U.S.C. § 552a(g)(3)(B) (1976). These fees would not have gone to a separate fund earmarked for legal services, but would have inured to the union to use as it wished. The court observed that "the union would profit—perhaps handsomely—on the legal activities of those lawyers under any ar-

1. This appeal was dismissed, subject to reactivation had we determined that the Court of Appeals for the Federal Circuit had jurisdiction.

rangement whereby market-value fees wend their way into the union's general treasury." Id. at 852. Such an arrangement, the court reasoned, violates several fundamental tenets of legal ethics: it allows lay organizations to profit from the legal services of attorneys; it constitutes fee splitting with lay organizations; and it enables them to engage in the unauthorized practice of law. Id. at 851 (citing the American Bar Association, Code of Professional Responsibility (1976), Disciplinary Rule (DR) 2–103(D)(4)(a), DR 3–102, DR 3–101(A), Ethical Consideration (EC) 3–1, EC 3–3, EC 3–8). Because the ethical considerations and rules afford the public its best assurance of competent and responsible legal service, absent compelling circumstance (and the court discerned none), a salaried union attorney may not collect fees at the market rate. Id. at 853. The court then noted in dictum, when fees are "plowed back into the litigative programs that made their recovery possible in the first place," ethical problems may not exist and perhaps "such allowances would withstand criticism when the monies are directed into a fund for maintenance of a legal services program." Id. at 854, 855.

In *Goodrich v. Department of Navy*, 733 F.2d 1578 (Fed.Cir.1984), the Court of Appeals for the Federal Circuit held that a salaried union attorney is only entitled to attorney fees calculated at cost-plus-overhead rate under the Civil Service Reform Act, 5 U.S.C. § 7701(g)(1), even if the fees were to be deposited into a segregated legal representation fund. The court reasoned that if a union uses its general funds to furnish legal services to its members, fees paid to the legal fund in excess of costs permit the union to indirectly use legal fees for ordinary expenses. Thus it chose not to credit the *NTEU* dictum by concluding that segregation would not eliminate the vices identified in *NTEU*. See *Devine v. National Treasury Employees Union*, 805 F.2d 384 (Fed.Cir.1986) (reaffirming *Goodrich* and holding that under the fee shifting provisions of the Back Pay Act, 5 U.S.C. § 5596, a union attorney cannot recover fees calculated at market rate).

The Federal Circuit position is supported elsewhere. See *Johnson v. Orr*, 739 F.Supp. 945 (D.N.J.1988); *Harper v. Better Business Serv., Inc.*, 768 F.Supp. 817 (N.D.Ga.1991). Indeed the Board has had a longstanding policy of awarding fees calculated at the cost-plus-overhead rate. See for example, *O'Donnell v. Department of the Interior*, 2 MSPB 604, 611 n.10, 2 M.S.P.R. 445, 454 n. 10 (1980); *Wells v. Schweiker*, 12 MSPB 329, 331–32, 14 M.S.P.R. 175, 179 (1982); *Powell v. Department of Treasury*, 8 MSPB 21, 19 M.S.P.R. 174 (1984).

Nonetheless, the proceedings here are different from the proceedings in the Federal Circuit. The Federal Circuit has exclusive jurisdiction to review decisions of the Board over "pure" cases. 5 U.S.C. § 7703(b). See *Kean I*, 926 F.2d at 281. On the other hand, a "mixed" case involves discrimination prohibited by, among other statutes, Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. See 5 U.S.C. § 7702(a)(1)(B)(iii). In *Kean I*, we observed that *Goodrich* and *Devine* did not involve "mixed cases." 926 F.2d at 281 n. 3, 287. We noted that both the *Goodrich* and *Devine* courts distinguished their holdings from suits brought under the civil rights statutes. The *Goodrich* court said:

[T]he suit in [*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)] was brought under a civil rights statute. A major reason for awarding attorney's fees in such cases is to encourage and facilitate the bringing of suit to protect and vindicate those rights.... There is no comparable public policy to encourage the bringing of suit by federal employees challenging adverse personnel actions against them.

733 F.2d at 1580–81. The *Devine* court reiterated:

Different concerns exist when awarding attorney fees in civil rights cases where encouraging private attorneys general to come forth and challenge governmental abuses is undeniably an important concern, *see Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (Court held that under the Civil Rights Attorney's Fees Award Act of 1976, 42

U.S.C. § 1988 (Supp. V 1981), non-profit legal service organizations are entitled to a fee based on prevailing market rates rather than their costs); *see also Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and more compelling than in adverse action cases such as the one at bar. *Goodrich, supra,* at 1581–82.
805 F.2d at 388.

This case arises not simply from an adverse personnel decision, but rather from a discriminatory mistreatment prohibited by civil rights law. The standards governing the fee award here "grow out of the dynamics of civil rights law enforcement and are markedly unlike the standards for fee awards in non-discrimination federal personnel cases which the Federal Circuit, on review of the MSPB, has exclusive judicial cognizance of." *Kean I,* 926 F.2d at 287.

■ We conclude, as did the Courts of Appeals for the Ninth and the D.C. Circuits, that segregating legal fees eliminates ethical barriers to a market rate calculation for attorney fee awards. See *Curran v. Department of Treasury,* 805 F.2d 1406, 1408 (9th Cir.1986); *American Federation of Government Employees v. FLRA,* 944 F.2d 922, 937 (D.C.Cir.1991) (*AFGE*).

Allowing a union to benefit indirectly from the proceeds of law practice no more violates ethical rules than allowing a union to maintain lawyers to represent its members. See *United Mine Workers v. Illinois Bar Ass'n,* 389 U.S. 217, 224–25, 88 S.Ct. 353, 357–38, 19 L.Ed.2d 426 (1967). The fear that the benefit may amount to unauthorized practice of law or compromise an attorney's independent judgment or constitute splitting fees with laypersons is highly speculative. *Curran,* 805 F.2d at 1409. The argument that an attorney's professional judgment will be clouded by the union's influence has been for the most part foreclosed by *United Mine Workers.*

The union's influence, while theoretically possible, is hardly a real danger here. "Although the prospect of indirect benefits through successful litigation might encourage lay organizations to litigate more meritorious cases, they would still necessarily rely on attorneys to conduct the litigation." *Id.* And fees are not shared with a lay entity when paid into a separate account used solely by lawyers for litigation purposes. The D.C. Bar Committee on Legal Ethics has likewise concluded that any indirect benefit accruing to a union from a market rate fee award to its litigation fund does not encourage laypersons to practice law and does not compromise the attorneys' independent professional judgment. Opinion 176 (1986).[2]

Moreover, it is specious to reason that simply changing the amount a union attorney will receive will resolve the "ethical" dilemma. The issue is whether the union may derive a *benefit* and not the *amount* of the benefit. When a statute shifts fees, the fees will represent some benefit to the union, because attorney fees normally come from the general treasury fund. If so, the "size of the benefit varies, of course, but its character not one whit, and it defies logic to say that in one instance the benefit is ethically permissible but in the other it is not." *AFGE,* 944 F.2d at 936.

### III.

■ Section 7701(g)(1) entitles Kean to attorney's fees, and it unambiguously adopts the standard for fee awards under Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). We will therefore apply § 706(k) standards to Kean's case. The language of § 706(k) is identical to other fee shifting statutes, including 42 U.S.C. § 1988 (as amended by the Civil Rights Attorney's Fees Awards Act of 1976). When Congress amended § 1988, it intended to incorporate § 706(k)

**2.** See ABA Formal Opinion 355 (1987) (concluding that there is no unlawful fee splitting or unauthorized practice of law when a lawyer participates in a for-profit prepaid legal service plan, which are owned and operated by plan sponsors who offer subscribers certain "covered" legal services, even though plan members pay a monthly fee, part of which is kept by the plan sponsor to cover its overhead and profit).

principles. *Kean I*, 926 F.2d at 286 n. 9. See Sen.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5912 ("It is intended that the standards for awarding fees [under § 1988] be generally the same as under the fee provisions· of the 1964 Civil Rights Act."). Thus "cases interpreting § 1988 can be applied to § 706(k) as well." *Sullivan v. Commonwealth of Pennsylvania*, 663 F.2d 443, 447 n. 5 (3d Cir.1981).

In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court interpreted § 1988 to give market rate fees to a nonprofit legal services organization. There, plaintiff was the prevailing party in a suit under 42 U.S.C. § 1983 and was represented by attorneys from the Legal Aid Society of New York, which had no billing rate and would have received no fees from its clients. Nonetheless, the Court concluded that the legislative history of § 1988 clearly indicates that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." 104 S.Ct. at 1547.

In *Student Public Research Group v. AT & T Bell Lab.*, 842 F.2d 1436 (3d Cir. 1990), we determined the fee award for attorneys, who operate a for-profit public interest law firm that charges significantly less than a traditional law firm, under the fee shifting provisions of the Clean Water Act, 33 U.S.C. § 1251 et seq. We held that the appropriate hourly rate for computing the lodestar is the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity, rather than the firm's artificially low billing rate. Id. at 1450. We adopted the community market rule for three reasons. Id. at 1449–50. First, the rule advances the congressional policy of attracting competent counsel. Second, although we acknowledged that it may provide a windfall in certain cases, the rule provides the easiest method of calculating and administering fee grants. Last, we believed that *Blum* favors such a rule. We construed *Blum* as focusing on the fairness of awarding appropriate fees and the policy of attracting competent counsel in the future. "We therefore believe that the rule of *Blum* mandating the primacy of market rates may apply equally well where a for-profit public interest firm possesses a fee arrangement with its client." Id. at 1449.

Given the reasoning of *Blum* and *Student Public*, we would be inconsistent if we sanctioned the cost-plus-overhead rate for attorney's fees under 5 U.S.C. § 7701(g). First, that the union fund will receive a "windfall" is no basis for concluding otherwise. As we noted, the *Blum* Court was not particularly receptive to the argument even though "the Legal Aid Society of New York would have pursued the litigation anyway, and fee shifting, at least in the short run, was not strictly necessary to attract the attorneys to the case." *Id.*

Second, a market rate calculation here, even if actual costs are less, is reasonable because it will encourage private action by unions and its aggrieved members through the courts. Unlike the cases before the Federal Circuit, Kean's case was mixed, and the AFGE was not obligated under its duty of fair representation to provide legal services for statutory appeals. See *NTEU v. FLRA*, 800 F.2d 1165 (D.C.Cir.1986). Thus, while "[t]here is no comparable public policy to encourage the bringing of suit by federal employees challenging [only] adverse personnel actions against them," *Goodrich*, 733 F.2d at 1581, there is a strong public policy encouraging unions to represent plaintiffs like Kean who have been discriminatorily mistreated.

Abstract implications of ethical canons must not cloud analysis based upon the real policies behind fee shifting provisions of civil rights statutes.

> There are very few provisions in our Federal laws which are self-executing. Enforcement of the laws depends on governmental action and, in some cases, on private action through the courts. If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are

not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

1976 U.S.Code Cong. & Admin.News at 5913. The fee awards here "grow out of the dynamics of civil rights law enforcement," and must be awarded pursuant to the market rate calculation.

### III.

We conclude there are no ethical barriers to giving market rate attorney fees to salaried union attorneys when those fees are deposited in a segregated litigation fund, and hold that under such circumstances a salaried union attorney is entitled to attorney fees calculated at the prevailing market rate under 5 U.S.C. § 7701(g) and 42 U.S.C. § 2000e–5(k). We will reverse the district court's order and remand with instructions to enter an order for Kean giving attorney fees calculated at the market rate.