**ESTATE OF Albert P. SCHULTZ, Bonnie Schultz, Representative, Appellant**

v.

**John E. POTTER, Postmaster General, United States Postal Service.**

No. 08–4603.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit L.A.R. 34.1(a) on Sept. 9, 2009.

Filed: Oct. 20, 2009.

**714**

Alexander Schultz, Esq., Palm Beach Gardens, FL, for Appellant.

David C. Belt, Esq., United States Postal Service Office of Labor Law, Washington, DC, Paul D. Kovac, Esq., Office of the United States Attorney, Pittsburgh, PA, for John E. Potter.

Before: SCIRICA, Chief Judge and RENDELL and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The Estate of Albert P. Schultz ("Schultz") appeals from the District Court's summary judgment determination of Schultz's action to enforce a back-pay order of the U.S. Merit Systems Protection Board ("MSPB"). After 17 years of protracted judicial and administrative litigation, the parties have settled the merits of the underlying matter, a disability dis-

crimination claim by the late Mr. Schultz against the U.S. Postal Service, his former employer. In this appeal, Schultz challenges the District Court's computation of the Postal Service's back-pay (including benefits) and interest obligations under the Back Pay Act, 5 U.S.C. § 5596, and urges that the Court erred in refusing to consider arguments raised after Schultz's original motion for summary judgment. We conclude that the District Court for the Western District of Pennsylvania did not err in calculating Schultz's back pay award and applied the correct legal standards in making its calculations. We do determine that the Court erred in one aspect of its interest calculation: with respect to the Postal Service's April 14, 2008 back-pay payment, statutory interest should have accrued until "a date not more than 30 days before" the April 14, 2008 payment. 5 U.S.C. § 5596(b)(2)(B)(i). We further conclude that the District Court acted within its discretion in choosing not to entertain arguments raised by Schultz more than a year after the Court ruled on the parties' cross-motions for summary judgment. We will affirm in part and remand to the District Court for the limited purpose of calculating outstanding interest relating to the April 14, 2008 payment.[1]

---

1. The District Court had jurisdiction over Schultz's action to enforce the MSPB decision pursuant to 5 U.S.C. § 7703(b)(2). This Court dismissed an earlier appeal for lack of subject matter jurisdiction. *See Estate of Schultz v. Potter*, 285 Fed.Appx. 886 (3d Cir. 2008). The District Court entered final judgment on September 16, 2008, 2008 WL 4279811. Schultz timely filed a motion to alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which the District Court granted in part and denied in part on October 30, 2008, 2008 WL 4790653. Schultz timely appealed on November 17, 2008. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo, using the same

standard the District Court should have applied. *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125 (3d Cir.2002). Actions before the MSPB are generally classified as either "pure" or "mixed." "A pure case is when the employee alleges harm from an improper non-discriminatory personnel decision. A mixed case, on the other hand, is when the employee alleges such a personnel decision resulted in part from prohibited discrimination." *Kean v. Stone*, 966 F.2d 119, 121 (3d Cir.1992). Because Schultz alleged both an improper personnel action and discriminatory discharge, this was a mixed case. In mixed cases, the MSPB's decision concerning the discrimination issue is reviewed de novo, whereas its decision concerning the civil service issue is reviewed under a deferential

## I.

Because we write only for the parties, who are familiar with the facts, procedural history and contentions presented, we truncate our discussion of this case's overlong history.

Albert Schultz, a postal carrier hired in 1987, suffered from physical disabilities in his wrists and hands as a consequence of a work-related injury. *See Schultz v. U.S. Postal Serv. (Schultz II)*, 78 M.S.P.R. 159, 161 (1998). He voluntarily took leave-without-pay status on November 6, 1990. He also sought wage-replacement benefits under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., which were granted by the Department of Labor's Office of Workers' Compensation Programs ("OWCP").

On December 4, 1991, Schultz asked to return to work and requested accommodations for his injured hands and wrists. On February 24, 1992, the Postal Service informed him that it was considering his request to return to work, but his request was not granted. On November 24, 1992, the Postal Service discharged Schultz for failing to meet attendance requirements. *See Schultz v. U.S. Postal Serv. (Schultz I)*, 70 M.S.P.R. 633, 635 (1996). Schultz sought administrative relief from the MSPB and the EEOC, alleging that the Postal Service's actions constituted unlawful disability discrimination.[2]

The MSPB determined that Schultz's absence from work became a constructive suspension in violation of the Rehabilitation Act, 29 U.S.C. § 791, on February 24, 1992, when the Postal Service failed to accommodate his physical disability. *See Schultz II*, 78 M.S.P.R. at 164. The MSPB also determined that Schultz's November 24, 1992 removal violated the Rehabilitation Act and ordered the Postal Service to "cancel [his] removal and [reinstate] him effective November 24, 1992," with the "appropriate amount" of back pay, interest and benefits. *See Schultz I*, 70 M.S.P.R. at 642. Schultz was reinstated in September 1995, although he never returned to work. He took disability retirement from the Postal Service in November 1997, but later exercised his right to continue receiving FECA/OWCP benefits beyond that date. The Postal Service offered him a "limited duty" position on March 11, 1998, which he declined. Schultz died in October 2000.

The instant case arose from a petition filed by the Schultz Estate for enforcement of the MSPB orders directing back payment for Schultz's constructive suspension and removal periods. On May 12, 2004, while the petition for enforcement was pending before the MSPB, the parties entered into a settlement agreement resolving "all issues and claims against the agency related to Albert Schultz's employment," with two exceptions: (1) the proper amount of back pay due for the period after November 23, 1992 and (2) the timeliness of Schultz's enforcement action.

standard. *See* 5 U.S.C. § 7703(c). We agree with the District Court that because this case stems from Schultz's discrimination claim, it is subject to de novo review, although our ruling would be the same even under a deferential review. We ordinarily review a district court's back-pay calculations for abuse of discretion. *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 156 (3d Cir.1999). But where the question is whether the district court applied the correct legal standard in its back-pay calculations, our review is plenary. *Cf. Kean,*

966 F.2d at 121. We review a district court's decision not to entertain new arguments not adequately raised in the parties' summary judgment papers for abuse of discretion. *Kiewit E. Co., Inc. v. L & R Constr. Co.,* 44 F.3d 1194, 1204 (3d Cir.1995).

**2.** Schultz alleged discrimination based on both physical and mental disabilities. The claims related to mental disabilities were rejected by the MSPB and EEOC. See *Schultz II,* 78 M.S.P.R. at 164–166.

(App.166–167.) On September 13, 2004, an Administrative Judge of the MSPB concluded that Schultz's enforcement action was untimely. The full Board adopted that decision as its final order on July 22, 2005. The Schultz Estate filed this suit in the District Court on August 22, 2005, and the Postal Service subsequently abandoned its timeliness defense. The sole dispute in the District Court concerned the proper amount of back pay (including benefits) and interest due Schultz for the period after his removal on November 24, 1992.

## II.

After discovery, Schultz moved for summary judgment, asking the District Court to resolve three questions regarding the back-pay claim:

1. Is the value of fringe benefits payable, and if so, what is the monetary value of fringe benefits payable?
2. On what date do back pay and benefits terminate?
3. If and when should workers' compensation benefits offset back pay in the interest computation under the Back Pay Act?

The Postal Service cross-moved for summary judgment on each point. (App.4.)

On the issue of fringe benefits, the District Court held that the calculation of fringe benefits must be specific to the employee and cannot be based on generalized figures. The Court also held that the Postal Service was required to include health benefits in its calculation of Schultz's back pay, but was not required to include the value of contributions to Schultz's Thrift Savings Plan ("TSP"), as he never participated in the TSP. On the issue of termination of back pay, the Court held that the termination date for the calculation of back pay was June 12, 1996, the date that the MSPB ordered corrective

action. On the issue of offsets, the Court held that the Postal Service was entitled to offset back pay by the amount of FECA/OWCP benefits received by Schultz, and that FECA/OWPC benefits are to be offset prior to calculating back-pay interest. The Court's order was dated April 12, 2007 and was filed the next day. On April 14, 2008, the Postal Service paid Schultz $103,769.81 in accordance with this order, calculating interest through April 12, 2007. (App. 1.09–1.10; App. 10–11; Appellant's Br. 21; Appellee's Br. 56.)

At a hearing on May 2, 2007, the District Court concluded, without opposition, that no outstanding issues remained and ordered that the case "be marked closed." (App.2.) Schultz filed a notice of appeal on June 11, 2007. Oral argument was heard in this Court, but on July 22, 2008, we dismissed the case for lack of jurisdiction and remanded to the District Court for final disposition. *See Estate of Schultz v. Potter*, 285 Fed.Appx. 886 (3d Cir.2008) (finding that the District Court had issued an "administrative close-out order" that lacked finality).

On remand, the District Court specified that the total value of back pay due Schultz was $99,760.65 ($47,246.69 in back pay and allowances plus $52,315.73 interest plus $198.23 retirement deduction) and that the sum-certain value for health care benefits was $32,196.51 (for the period of November 24, 1992 to November 1, 1995, plus interest through the date of the previous District Court order).[3] Accordingly, the Court held that the total value of back pay, benefits and interest owed to Schultz totaled $131,957.16, and that because the Postal Service had already paid Schultz $103,769.81, the outstanding balance was $28,187.35. On remand, Schultz also filed a "Motion for Clarification," which pre-

---

**3.** Although the District Court indicated its previous order was dated April 27, 2007, it appears the actual date of that order was April 12, 2007. (App.109.)

sented arguments and evidence not reflected in Schultz's original motion for summary judgment or reply, and requested that the District Court consider all arguments raised in its briefs before this Court. The District Court rejected these arguments as untimely and entered final judgment on September 16, 2008.

Schultz timely filed a motion to alter the judgment, contending that (1) the District Court had overlooked evidence and arguments in Schultz's original motion for summary judgment, (2) the parties had not agreed that no issues were outstanding and (3) Schultz was entitled to benefits for the period of his constructive suspension from February 24, 1992 to November 23, 1992. The District Court rejected these contentions, but amended its order to direct that "the ending date for computation of interest for payment not yet made is not more than 30 days before the date on which payment is made." (App. 1.04 (citing 5 U.S.C. § 5596(b)(2)(B)(i)).) The District Court issued its ruling on October 30, 2008. Schultz timely appealed on November 17, 2008.

### III.

■ Schultz contends that the District Court erred in construing 5 U.S.C. § 5596(b)(2)(B)(i) to apply only to "payment not yet made," and contends that the Court's construction prematurely ended the interest accrual period on the amount paid by the Postal Service on April 14, 2008. Schultz argues that under 5 U.S.C. § 5596(b)(2)(B)(i), interest on this amount should have accrued until a date "not more than 30 days before the date on which payment [was] made." He urges that the District Court erred in permitting interest

on the April 14, 2008 payment to accrue only through April 12, 2007, the date the District Court initially ordered that amount to be paid.

We agree. The Back Pay Act directs that interest on back pay due under the Act "shall be computed for the period beginning on the effective date of the withdrawal or reduction involved and *ending on a date not more than 30 days before the date on which payment is made.*" 5 U.S.C. § 5596(b)(2)(B)(i) (emphasis added); *see also* 5 C.F.R. § 550.806(b), (f). The District Court correctly amended its order to reflect this statutory directive with regard to back-pay amounts not yet paid and should have done the same with regard to the amount paid to Schultz on April 14, 2008. Though this case has already overworked the judiciary, we remand to the District Court on one issue: the computation of interest still owing on the back-pay amount paid on April 14, 2008, which accrued, as a matter of law, "from the date of the withdrawal or reduction involved and ending on a date not more than 30 days before" April 14, 2008. 5 U.S.C. § 5596(b)(2)(B)(i).[4] We expect the active parties on remand to extend the maximum good faith effort to reach agreement on this straightforward mathematical calculation without adding additional burdens on the District Court.

### IV.

Schultz next contends that FECA/OWPC wage-replacement payments should have been offset from the calculation *after* interest was calculated for outstanding back pay rather than before interest was

---

**4.** We would have preferred if in its brief Appellant (1) had asserted its objections to the District Court's interest calculation to the District Court, (2) had calculated the amount of additional interest it now claims is due and shared that information with this Court and

(3) cited some authority to support its cursory, three-paragraph argument on this issue. But because we remand to the District Court only on one narrow issue, we deliberately overlook the derelictions of the Appellant in its brief.

calculated. For the back-pay period between November 24, 1992 and June 12, 1996, Schultz received $77,390.89 in FECA/OWPC payments from the Postal Service. Schultz contends that the Back Pay Act requires that interest be paid on this $77,390.89 amount in addition to interest on the difference between that amount and what he would have earned had he not been terminated. We disagree.

The Back Pay Act endeavors "to make workers whole who [have] suffered on account of unfair labor practices." *Martin v. Dep't of Air Force*, 184 F.3d 1366, 1372 (Fed.Cir.1999). To that end, the Act awards back pay and interest when "an appropriate authority" directs the correction of an unjustified personnel action that deprived the employee of pay. 5 C.F.R. §§ 550.805–550.806. A back-pay award restores to the employee "an amount equal to all or any part of the pay, allowances, or differentials" he or she would have received if the unjustified action had not occurred, offset by any (1) "outside earnings undertaken to replace the employment" and (2) "erroneous payments received from the government as a result of the unjustified or unwarranted personnel action." *Id.* § 550.805(e)(1)–(2); see 5 U.S.C. § 5596(b)(1)(A)(i). Interest on such an award accrues from "the date or dates (usually one or more pay dates) on which the employee would have received the pay, allowances, and differentials if the unjustified or unwarranted personnel action had not occurred." 5 C.F.R. § 550.806(a)(1). Significantly, "outside earnings" are deducted from gross back pay before interest is calculated, while "erroneous payments" are deducted after the calculation of interest. *See id.* § 550.806(c).

■ Schultz seeks to maximize interest on his back-pay award by characterizing FECA/OWPC benefits as "erroneous payments." We reject this characterization. FECA/OWPC wage-replacement payments, a form of workers' compensation, arise from a separate statutory scheme—FECA—and do not fall into either the "outside earnings" or "erroneous payments" categories of the Back Pay Act.[5] Contrary to Schultz's contention, the FECA/OWPC payments were not received by Schultz "as a result of the unjustified or unwarranted personnel action," but as compensation for his work-related injury. Employees may recover under both FECA and the Rehabilitation Act, which address different injuries: work-related injuries resulting in diminished working capacity and discriminatory actions by employers, respectively. *See Miller v. Bolger*, 802 F.2d 660, 663, 665–667 (3d Cir.1986). Accordingly, Schultz's receipt of FECA/OWPC benefits is hardly "erroneous."

■ The Postal Service contends that FECA/OWCP benefits fall within the definition of "pay, allowances, and differentials" Schultz had already received, and hence should be deducted before computing interest. We agree. In assessing back pay due under the Back Pay Act, the first step is to compute the "pay, allowances, and differentials" of which the employee was deprived due to the unwarranted personnel action. 5 U.S.C. § 5596(b)(1)(A)(i). The implementing regulations state that "[p]ay, allowances, and differentials means pay, leave, and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R.

---

**5.** Although administered by the Department of Labor, there is no collateral payment source under FECA and the Postal Service was the sole source of the actual payments made.

§ 550.803. FECA/OWCP wage-replacement payments are a monetary employment benefit, to which an injured federal employee is entitled by statute, payable by the employing agency. Accordingly, we determine that FECA/OWCP benefits qualify as "pay, allowances, and differentials" under the Back Pay Act.

■ We conclude that the District Court properly computed interest *after* deducting the $77,390.89 in FECA/OWCP benefits from Schultz's gross back-pay award. It would be a windfall to Schultz if the Postal Service were required to pay interest on monies it had already paid him.[6] Indeed, the Back Pay Act's objective of remedying "unfair labor practices" would not be advanced by a decision awarding interest on payments already received. *See Martin,* 184 F.3d at 1372.

## V.

■ Without need for elaboration, we conclude that the District Court properly calculated Schultz's fringe benefits. Additionally, the District Court acted within its discretion to not entertain arguments and evidence not reflected in Schultz's original motion for summary judgment or reply, including Schultz's attempt to extend the time frame for calculating health benefits. We find Schultz's remaining contentions untimely and without merit.

\*　　\*　　\*　　\*　　\*　　\*

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

We will remand to the District Court for final computation of interest due on the back-pay amount paid on April 14, 2008, in accordance with this opinion. We trust that this straightforward mathematical calculation will mark the end of this interminable case. On all other points the judgment of the District Court will be affirmed.

---

**6.** To the extent that Schultz argues that he was deprived of the time value of some of his FECA/OWCP benefits because of delayed receipt of certain payments, the timing of these payments is entrusted solely to the Department of Labor, 5 U.S.C. § 8128(a), and is not subject to review by this Court. *See* 5 U.S.C. § 8128(b); *McDougal–Saddler v. Herman,* 184 F.3d 207, 211–214 (3d Cir.1999).