# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ALBERT P. SCHULTZ,<br>Appellant, | DOCKET NUMBER<br>PH-0752-94-0233-M-1 |
| v. | |
| UNITED STATES POSTAL SERVICE,<br>Agency. | DATE: December 16, 2016 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Alexander Schultz</u>, Esquire, Lake Worth, Florida, for the appellant.

<u>Mark Manta</u>, Philadelphia, Pennsylvania, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1       The appellant has filed a petition for review, and the agency has filed a cross petition for review of the addendum initial decision, which awarded the appellant $125,428.89 in attorney fees and costs. Generally, we grant petitions such as these only when: the addendum initial decision contains erroneous findings of material fact; the addendum initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the addendum initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review.  Therefore, we DENY the petition for review and the cross petition for review.  We AFFIRM the addendum initial decision, except as expressly MODIFIED by this Final Order to:  address the agency's argument that the appellant's attorney fees motion should be dismissed as untimely filed address the appellant's argument that the Board should increase the fee award by 15 percent to offset a tax burden; reduce the number of claimed hours of fees for various reasons set forth below; and reduce the lodestar[2] for the period from 2010 to 2015 to account for the appellant's partial success litigating the fee petition.

## BACKGROUND

This case has a lengthy and complex procedural history that we summarize below.  The appellant[3] initially filed a Board appeal alleging that the agency discriminated against him based upon his physical and mental disabilities when it

---

[2] The lodestar consists of the hours reasonably spent on the litigation multiplied by the attorney's reasonable hourly rate.  *See Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 10 (2011).

[3] Since the appellant's death in 2000, the interests of his estate have been represented by his brother and attorney, Alexander Schultz.  *See Schultz v. U.S. Postal Service*, 89 M.S.P.R. 123, ¶ 3 n.1 (2001); MSPB Docket No. PH-0752-94-0233-A-6, Final Order at 2 n.2 (Apr. 4, 2012).  The word "appellant," as used throughout this Final Order, refers to the appellant, his estate, and the appellant's counsel.

constructively suspended him and subsequently removed him.  *See Schultz v. U.S. Postal Service*, 70 M.S.P.R. 633 (1996).  After litigation before the Board and the Equal Employment Opportunity Commission, the Board ordered the agency to pay the appellant back pay, interest, and benefits due under the Back Pay Act, 5 U.S.C. § 5596, for the period of the constructive suspension.  *Schultz v. U.S. Postal Service*, 89 M.S.P.R. 123, ¶¶ 12 (2001).  Thereafter, over a period of many years, the parties litigated the agency's compliance with the Board's order before the Board, the U.S. District Court for the Western District of Pennsylvania, and the U.S. Court of Appeals for the Third Circuit.  In a 2009 decision, the Third Circuit affirmed, with a minor change in the interest computation, the district court's September 16, 2008 award of $131,957.16 in back pay, interest on back pay, and benefits.  *Estate of Schultz v. Potter*, 349 F. App'x 712, 715-19 (3d Cir. 2009); *see Estate of Schultz v. Potter*, No. 05-1169, 2008 WL 4279811, at *2 (W.D. Pa. Sept. 16, 2008), *aff'd in part and remanded in part by Estate of Schultz v. Potter*, 349 F. App'x 712 (3d Cir. 2009).

¶3       On January 4, 2010, the appellant filed a motion with the district court, seeking attorney fees for work related to the removal and compliance actions before the Board, and also for work performed in the district court appeal.  *See Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *1 (W.D. Pa. Mar. 5, 2010) (2010 Fee Decision); MSPB Docket No. PH-0752-94-0233-M-1, Remand Attorney Fees File (RAFF), Tab 63 at 66-85.  The district court granted in part and denied in part the fees motion, awarding the appellant $19,305.  2010 Fee Decision at *10.  The appellant then moved the district court to remand his motion for fees to the Board, arguing that the court lacked jurisdiction to award fees for work performed before the Board.  *See Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 2597697, at *2-*3 (W.D. Pa. June 24, 2010) (Modifying Decision); *Schultz v. U.S. Postal Service*, MSPB Docket No. PH-0752-94-0233-A-6, Attorney Fees File (AFF), Tab 5 at 199-211.  The U.S. district court judge agreed and modified the award to exclude fees and costs incurred for work done

before the Board. Modifying Decision at *2-*3. The district court judge declined to remand, however, explaining that there was nothing left in the case to remand, but noting that the appellant could attempt to file a motion for attorney fees with the Board. *Id.* at *2.

¶4 On July 14, 2010, the appellant filed with the Board the current fee petition for work performed before the Board in both the removal and the compliance actions, AFF, Tab 1, and he subsequently requested fees for time spent litigating the current fee petition, RAFF, Tabs 26, 69. The administrative judge dismissed the petition as untimely filed without good cause shown for the filing delay. *Schultz v. U.S. Postal Service*, MSPB Docket No. PH-07522-94-0233-A-6, Initial Decision (Nov. 10, 2010). On review, the Board found that the administrative judge failed to provide the appellant with proper notice regarding the timeliness issue, and, after affording such notice, *Schultz v. U.S. Postal Service*, MSPB Docket No. PH-0752-94-0233-A-6, Petition for Review (A-6 PFR) File, Tab 11, it vacated the initial decision and issued a final order dismissing the petition for attorney fees incurred during the removal action as untimely filed without good cause shown for the filing delay. *Schultz v. U.S. Postal Service*, MSPB Docket No. PH-0752-94-0233-A-6, Final Order at 4-13 (Apr. 4, 2012). The Board found that the appellant was not entitled to fees for the compliance action because he was not the "prevailing party" in that action, as required by 5 U.S.C. § 7701(g)(1). *Id.* at 14-15.

¶5 The appellant then sought judicial review of the Board's decision, and the district court found that the Board properly dismissed as untimely filed the appellant's fee petition for work performed during his removal appeal. *Schultz v. Donahoe*, No. 13-1363, 2015 WL 1491754, at *4 (W.D. Pa. Mar. 31, 2015) (2015 Compliance Fee Decision). The district court further found, however, that the Board erred in denying for lack of entitlement the appellant's fee petition for work done during the compliance matter. *Id.* at *5. Specifically, it found that the appellant became the "prevailing party" in the compliance action when the

district court issued an award in his favor. *Id.* Accordingly, the district court remanded the case to the Board to determine attorney fees incurred by the appellant during the Board compliance matter. *Id.*

¶6 On remand, the administrative judge found that the appellant was the prevailing party, he incurred attorney fees, and an award of fees was warranted in the interest of justice. RAFF, Tab 79, Addendum Initial Decision (AID) at 6-8. He further found, however, that the appellant did not show that the amount of his fee request was reasonable. AID at 8-12. More specifically, he found that the claimed hourly rate of $880 was "patently unreasonable" and that a $250 hourly rate was reasonable. AID at 9. The administrative judge disallowed 24 of the 515 hours claimed for work on the compliance matter, finding that 24 hours were spent on clerical tasks. AID at 10. He further found that the lodestar amount should not be reduced because the appellant obtained a significant amount of the relief he sought. AID at 11. Accordingly, the administrative judge awarded the appellant attorney fees in the amount of $122,750 (i.e., $250 multiplied by 491 hours). AID at 12. He also awarded the appellant $2,678.89 in costs for a total amount of $125,428.89. *Id.*

¶7 The appellant has filed a petition for review arguing that: he is entitled to a fee award at a higher hourly rate, Remand Petition for Review (RPFR) File, Tab 3 at 5-16, 21; the administrative judge improperly disallowed 24 hours for clerical tasks, *id.* at 18-20; and the administrative judge erred in failing to increase the fee award by 15 percent to offset the increase in his tax burden as a result of the lump-sum fee award, *id.* at 17. The agency has filed a response and cross petition for review arguing that the Board should dismiss the attorney fees motion as untimely filed without a showing of good cause for the filing delay. RPFR File, Tab 7 at 11-14. In the alternative, the agency asserts that the administrative judge should have reduced the attorney fee award to reflect the appellant's limited success in his compliance appeal. *Id.* at 14-18. The agency also alleges that the appellant is not entitled to a fee award for hours spent preparing the fee petition

and, alternatively, that the amount of time claimed for preparing the fee petition is unreasonable. *Id.* at 18-20. The appellant has filed a response to the cross petition for review. RPFR File, Tab 11.

## ANALYSIS

The agency's arguments regarding the timeliness of the attorney fee petition are not within the scope of the Board's review on remand.

¶8    In its cross petition for review, the agency alleges that the administrative judge improperly failed to address its argument that the appellant's current fee petition was untimely under 5 C.F.R. § 1201.203(d).[4] RPFR File, Tab 7 at 11-14; *see* RAFF, Tab 14 at 6-10. Specifically, the agency asserts that the district court's September 16, 2008 judgment awarding the appellant back pay became final on October 30, 2008, when the district court denied the appellant's motion to amend the judgment, and the appellant was therefore required to file his attorney fees petition in the compliance matter by December 29, 2008. RPFR File, Tab 7 at 13; *see Estate of Schultz v. Potter*, No. 05-1169, 2008 WL 4790653 (W.D. Pa. Oct. 30, 2008), *aff'd in part and remanded in part by Estate of Schultz v. Potter*, 349 F. App'x 712 (3d Cir. 2009). The agency argues that, because the appellant did not file his attorney fees petition with the Board until July 14, 2010, the petition was untimely by 502 days, and the appellant did not establish good cause for the filing delay. RPFR File, Tab 7 at 13-14.

¶9    We find these arguments unavailing. The district court's March 31, 2015 decision stated that it had considered the agency's motion for summary judgment, and remanded the case to the Board to determine attorney fees due for the work

---

[4] Under 5 C.F.R. § 1201.203(d), an attorney fees petition must be filed within 60 days after the Board issues a final decision on the merits. *See Mynard v. Office of Personnel Management*, 108 M.S.P.R. 58, ¶ 8 (2008). The Board may waive the deadline if the appellant establishes good cause for the filing delay. *See* 5 C.F.R. § 1201.12. To establish good cause, a party must show that he exercised due diligence or ordinary prudence under the particular circumstances of the case. *See Mynard*, 108 M.S.P.R. 58, ¶ 7; 5 C.F.R. § 1201.12.

related to the compliance action that was successfully appealed to the district court. 2015 Compliance Fee Decision. Although the district court did not explicitly find that the attorney fees motion was timely, by remanding the case to the Board to determine attorney fees for work performed before the Board in the compliance action, the court evidently viewed the appellant's fee petition as timely filed. Given these circumstances, we find that the timeliness of that fee petition is not within the scope of the Board's review on remand.

The administrative judge correctly determined that $250 is a reasonable hourly rate.

¶10    Pursuant to 5 U.S.C. § 7701(g)(1), the Board may require an agency to pay reasonable attorney fees incurred by an employee, including fees incurred during litigation of a petition for enforcement, if the employee is the prevailing party and the Board determines that such payment is warranted in the interest of justice. *Shelton v. Environmental Protection Agency*, 115 M.S.P.R. 177, ¶ 7 (2010). To establish entitlement to an award of attorney fees under 5 U.S.C. § 7701(g)(1), an appellant must show that: (1) he was the prevailing party; (2) he incurred attorney fees pursuant to an existing attorney-client relationship; (3) an award of fees is warranted in the interest of justice; and (4) the amount of fees claimed is reasonable. *Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 7 (2011). The only element in dispute in this case is the reasonableness of the fees claimed. *See generally* RPFR File, Tabs 3, 7.

¶11    The first step in determining an attorney fee award is calculating the lodestar, which, as previously noted, consists of the hours reasonably spent on the litigation multiplied by the attorney's reasonable hourly rate. *See Driscoll*, 116 M.S.P.R. 662, ¶ 10. The administrative judge here found that $250 is the reasonable hourly rate for attorney fees based on two factors: (1) his experience reviewing legal fee requests from attorneys in Philadelphia; and (2) the U.S. district court's prior approval of an hourly rate of $250 for time expended by the

appellant's counsel in the compliance matter. ID at 8; *see* 2010 Fee Decision at *3.

¶12 The appellant argues on review that the administrative judge erred in relying on the district court judge's finding in her 2010 fee decision that $250 was a reasonable hourly rate for work performed before the Board in the compliance proceeding because she subsequently vacated the attorney fees award as it pertained to such work. RPFR File, Tab 3 at 9-10. We disagree. As previously explained, the district court vacated the award in a June 24, 2010 opinion on jurisdictional grounds pursuant to the appellant's motion. *See* Modifying Decision at *2-*3. The decision to vacate the award does not detract from the validity of the district court's determination that $250 was a reasonable hourly rate for the work performed before the Board in the appellant's compliance proceeding.

¶13 Moreover, in finding that an hourly rate of $250 was reasonable, the district court noted as follows: "the [appellant] urges a reimbursement rate of $250 per hour, suggesting in an affidavit that this rate is reasonable based on cases in Florida and Pennsylvania and his experience as an attorney of 32 years." 2010 Fee Decision at *3. In addition, in his current fee petition, the appellant requested reimbursement at the hourly rate reflected in the 2004 fee agreement, but no less than $250 per hour. AFF, Tab 1 at 25; *see* RAFF, Tab 18 at 6. Thus, the administrative judge's determination that $250 is a reasonable hourly rate for the work performed before the Board in the compliance proceeding is consistent not only with the district court's attorney fee award for that work but also with the hourly rate that the appellant requested before the district court and in his current fee petition with the Board.

¶14 The appellant further argues on review that, in determining the hourly rate, the administrative judge should have adjusted the $250 hourly rate for inflation by either applying "an interest factor" or awarding fees at current billing rates as

set forth in either the *Laffey* Matrix[5] or the rate schedule issued by the Community Legal Services of Philadelphia (CLS), which lists the prevailing rates among lawyers in the Philadelphia area. [6] RPFR File, Tab 3 at 7-9; *see* RAFF, Tabs 24, 28. The Board has held that attorney fees awarded under 5 U.S.C. § 7701(g)(1) may not be enhanced, either by applying an attorney's current rate retroactively or by granting interest on fees, to account for delay in payment. *Caros v. Department of Homeland Security*, 122 M.S.P.R. 231, ¶ 6 n.3 (2015) (citing *Krape v. Department of Defense*, 97 M.S.P.R. 430, ¶ 10 (2004)). The appellant argues that the "no interest rule" does not apply here because the Supreme Court held in *Loeffler v. Frank*, 486 U.S. 549 (1988), that interest on back pay may be awarded against the U.S. Postal Service. RPFR File, Tab 3 at 7-8. The appellant contends that, pursuant to *Loeffler*, the administrative judge should have awarded attorney fees at the rates set forth in the *Laffey* Matrix or the CLS rate schedule. *Id.* at 9.

¶15     We find this argument unpersuasive. Contrary to the appellant's assertion, *Loeffler* has no bearing on whether interest is awardable on attorney fees incurred in compliance proceedings before the Board, nor does it support his contention that attorney fee awards for work in such proceedings should be based on the

---

[5] The *Laffey* Matrix is a schedule of hourly rates allowed by the U.S. District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 374-75 (D.D.C. 1983), *aff'd in part and rev'd in part on other grounds*, 746 F.2d 4, 24-25 (D.C. Cir. 1984). It purports to show the prevailing market rates for attorneys in the District of Columbia. *Rumsey v. Department of Justice*, 123 M.S.P.R. 502, ¶ 17 n.6 (2016).

[6] On review, the appellant asserts the $880 hourly rate set forth in the fee agreement "merely serves as a cap on the hourly rate," and he argues that the addendum initial decision should have focused on the propriety of using the "Philadelphia CLS forum rates." RPFR File, Tab 3 at 14. Given that the appellant explicitly requested an hour billing rate of $880 during the July 20, 2015 status conference convened for the purpose of clarifying his hourly billing rate, we do not fault the administrative judge for not addressing whether to award fees at the rates set forth in the CLS schedule.

current prevailing rates, as set forth in the *Laffey* Matrix or the CLS rate schedule. Thus, the appellant is not entitled to an enhanced hourly rate pursuant to *Loeffler*.

¶16     We also find unpersuasive the appellant's argument that the administrative judge should have awarded attorney fees at the hourly rates set forth in the *Laffey* Matrix or the CLS rate schedule because the agency did not object to his assertion that the administrative judge should award attorney fees at those rates. RPFR File, Tab 3 at 5-6; *see* RPFR, Tabs 16, 59. Even absent a specific challenge from the agency, the Board must ensure that only reasonable fees are awarded. *See* 5 U.S.C. § 7701(g)(1); *Ruble v. Office of Personnel Management*, 96 M.S.P.R. 44, ¶ 8 (2004). Thus, contrary to the appellant's apparent assertion on review, he is not entitled to attorney fees at the hourly rates set forth in the *Laffey* Matrix or the CLS rate schedule merely because the agency purportedly failed to object to his contention that he should be awarded fees at those rates.

¶17     In support of his claim that he is entitled to an enhanced hourly rate, the appellant also cites various cases in which the Board and U.S. district courts have awarded fees at higher hourly rates, including the rates set forth in the *Laffey* Matrix and the CLS rate schedule. RPFR File, Tab 3 at 15-16. The appellant also seems to argue that he is entitled to fees at a higher hourly rate because the Third Circuit "mandated" the use of current market rates when awarding attorney fees in *Lanni v. State of New Jersey*, 259 F.3d 146 (3d Cir. 2001), and has approved the use of the CLS rate schedule by district courts. RPFR File, Tab 3 at 7, 10.

¶18     The cases cited by the appellant have no precedential value. Specifically, they are either initial decisions or nonprecedential final orders and, thus, are not binding precedent on the Board. *See Roche v. Department of Transportation*, 110 M.S.P.R. 286, ¶ 13 (2008) (stating that the Board's initial decisions are not precedential). District court decisions also are not binding on the Board. *See Cook v. Department of the Interior*, 74 M.S.P.R. 454, 459-60 (1997) (citing *Ruiz v. U.S. Postal Service*, 59 M.S.P.R. 76, 79 (1993)). Also, other than decisions of the U.S. Court of appeals for the Federal Circuit, the decisions of the

circuit courts are not binding on the Board. *See Bowman v. Small Business Administration*, [122 M.S.P.R. 217](), ¶ 13 n.8 (2015). In sum, we find no reason to disturb the administrative judge's finding that $250 is a reasonable hourly rate in this case.

The appellant is not entitled to an increase in his attorney fee award to offset the tax consequences of a lump-sum payment.

¶19    Next, the appellant alleges that the administrative judge improperly failed to address his argument that the fee award should be increased by 15 percent to offset the tax burden of a lump-sum payment, and he reiterates this argument on review. RPFR File, Tab 3 at 17; *see* RAFF, Tab 16 at 32-33. The appellant does not cite any Board precedent to support his claim, but instead asserts that such an increase is consistent with Third Circuit precedent in discrimination cases. RPFR File, Tab 3 at 17. As previously noted, however, circuit court decisions other than from the Federal Circuit are not binding on the Board. *See Bowman*, [122 M.S.P.R. 217](), ¶ 13 n.8. Although there is no Board precedent directly addressing the Board's authority to increase an attorney fee award to offset the tax burden of a lump-sum payment, it is well settled that the Board lacks the authority to remedy the tax consequences of a back pay award. *See, e.g., Alford v. Department of Defense*, [113 M.S.P.R. 629](), ¶ 23 (2010). Given the absence of any Board or controlling court precedent supporting the appellant's assertion, we find that he is not entitled to an increase in his attorney fee award to offset his tax consequences.

Reasonableness of claimed hours: 2001-2005

¶20    Having determined that $250 is a reasonable hourly rate, we now turn to the number of hours reasonably spent. This case involves two periods of legal representation: (1) when the appellant litigated the compliance matter before the Board, i.e., 2001 through 2005; and (2) when the appellant litigated the current fee petition, i.e., 2010 through 2015. As to the former period, the appellant claimed 271 hours. RAFF, Tab 26 at 4-17 (claiming 237.8 hours from August 2,

2001,[7] through August 5, 2004; and 33.2 hours from September 17, 2004, through March 17, 2005).  As to the latter period, the appellant claimed 242.4 hours.[8]  RAFF, Tab 26 at 17-20.  For ease of discussion, we will address each period separately.

> *We modify the addendum initial decision to disallow 7.7 hours for time spent on clerical tasks.*

¶21  Regarding the former period, the administrative judge noted that the district court judge's 2010 fee decision disallowed time spent on clerical tasks, and he agreed with the district court judge that time spent on clerical tasks is not compensable as attorney fees.  AID at 10.  The administrative judge then disallowed 24 hours of work performed on 16 dates from April 30, 2002, through June 28, 2004, based on his finding that those hours were spent on clerical tasks.[9]  *Id.*  The appellant challenges this finding on review, arguing that much of the disallowed time was not clerical.  RPFR File, Tab 3 at 19.  He further contends that, to the extent that he spent time on clerical tasks, such time should be allowed because delegating the tasks would have taken longer than performing them himself.  *Id.* at 18-19.

¶22  We have reviewed the documentation pertaining to the dates in question, including an April 2006 fee statement, which the appellant originally submitted to

---

[7] Although the addendum initial decision states that the appellant is seeking fees for the period from September 17, 2001, to the present, AID at 11, the list of claimed hours submitted by the appellant below in support of his fee request covers work beginning on August 2, 2001.  RAFF, Tab 26 at 4.

[8] The number of hours the appellant claimed to support his current fee petition total 513.4, which is 1.6 hours fewer than the 515 hours he claimed during a July 20, 2015 status conference for work related to the compliance matter before the Board.  RAFF, Tabs 26, 69, 75.  Accordingly, we modify the addendum initial decision to disallow the 1.6 hours for which there appears to be no supporting documentation.

[9] Due to an apparent typographical error, the addendum initial decision identifies "01/22/2003" instead of "10/22/03" as one of the dates for which the administrative judge disallowed hours as time spent on clerical tasks.  AID at 10; *see* RAFF, Tab 26 at 11; 2010 Fee Decision at *5 (identifying "10/22/03" as one of the dates on which delegable tasks were performed).

the district court in June 2006, RAFF, Tab 17 at 10-12, and a chart that the appellant submitted during the proceedings below (Chart A), which describes in greater detail the work performed on most of these dates.[10]  RAFF, Tab 59 at 34-36.  Based on our review, we agree with the appellant that many hours that the administrative judge apparently disallowed[11] were not spent on clerical tasks. For example, several hours on the pertinent dates were spent on research, record review, and preparing letters and pleadings.  *See, e.g.*, RAFF, Tab 17 at 10-11, Tab 59 at 34-36 (entries for April 30, 2002, and December 28, 2002, January 21 and 27, 2003, April 22, 2003, and August 26, 2003).

¶23     In addition, Chart A indicates that some of the tasks performed on the pertinent dates that appeared to be described as clerical in the April 2006 fee statement, were not.  For example, the April 2006 fee statement states that the appellant's counsel spent .3 hours on June 17, 2002, preparing a facsimile. RAFF, Tab 17 at 10.   Chart A explains that the facsimile consisted of a memorandum transmitted via facsimile.  RAFF, Tab 59 at 34.  Based on this explanation and our review of the memorandum, RAFF, Tab 40 at 39, we find that the .3 hours of work for June 17, 2002, should not be disallowed because it

---

[10]  Chart A does not include an entry for two of the dates for which hours were disallowed:  October 22, 2003, and June 28, 2004.  RAFF, Tab 59 at 34-36.  Also, although Chart A includes an entry for June 11, 2002, another date for which the administrative judge disallowed hours as time spent on clerical tasks, AID at 10, it does not explain why the work performed on that date was not clerical, RAFF, Tab 59 at 34.

[11]  Our review of the record indicates that the total number of claimed hours for these dates exceeds 24 hours.  RAFF, Tab 26 (claiming 27.4 hours for the dates in question). Thus, the administrative judge apparently allowed some hours for those dates.  We cannot determine which of the claimed hours were disallowed, however, as the addendum initial decision does not state how much time the administrative judge disallowed for each date.  We also cannot determine why the administrative judge disallowed .4 more hours for the dates in question than the district court judge disallowed in her 2010 fee decision.  ID at 10; *see* 2010 Fee Decision at *5.

was not clerical in nature, as it involved writing a memorandum, rather than merely transmitting a facsimile.[12]

¶24     However, other work performed on the dates in question, such as preparing certificates of service, was clerical, and thus, not awardable as attorney fees. *See Diehl v. U.S. Postal Service*, 88 M.S.P.R. 104, ¶ 16 (2001). Notwithstanding the appellant's argument that the time spent performing clerical tasks should be allowed because delegating those tasks to someone else would have taken longer than performing them himself and thus it was more "cost effective" for him to perform them, RPFR File, Tab 3 at 19,because the work at issue was clerical, the time spent performing it is not awardable as attorney fees, *id*.

¶25     After reviewing the record, we find that the following time should be disallowed as time spent on clerical tasks: .3 hours on June 11, 2002, for preparing a facsimile in the compliance appeal;[13] .3 hours on October 16, 2002, for preparing certificates of service; and .5 hours on June 28, 2004, for preparing a W-9 Tax Identification Number and Certification Form and a facsimile to agency counsel in the compliance appeal.[14]

¶26     In addition, in her 2010 fee decision, the district court judge disallowed 6.6 hours for the following dates as time spent on delegable tasks: February 18, 2004 (3.7 hours); June 25, 2004 (1.8 hours); and September 23, 2004 (1.1 hours). 2010 Fee Decision at *6; *see* RAFF, Tab 26 at 12, 16. The district court judge

---

[12] Similarly, we find that the .8 hours for work on July 27, 2002, which the April 2006 fee statement describes as facsimile preparation, RAFF, Tab 17 at 10, is allowable because that time was spent drafting correspondence that addressed substantive issues regarding the compliance matter. RAFF, Tab 59 at 34; *see* RAFF, Tab 40 at 25-27.

[13] As previously noted, Chart A does not explain why preparing a facsimile on June 11, 2002, is attorney work rather than clerical work. We have reviewed the facsimile in question, which merely informs the then-presiding administrative judge of the appellant's counsel's availability for a status conference, and we find that this is not legal work.

[14] As previously noted, Chart A does not include an entry for June 28, 2004, nor has the appellant explained why this work was not clerical.

explained that, although the billing entries for these dates included both delegable and nondelegable tasks, she could not separate the delegable tasks because the appellant had "block billed" for those matters and, therefore, she disallowed the entire amount billed for the block entries. 2010 Fee Decision at *6 n.10.

¶27 Although this time was not addressed by the administrative judge, in the documents submitted by the appellant below in support of his current fee request, he acknowledged that he performed clerical tasks on these dates, but asserted that he should nonetheless be awarded attorney fees for those tasks because it took less time for him to perform them than it would have taken to delegate them. RAFF, Tab 26 at 12, 16. For the reasons discussed above, we find such an argument unpersuasive. We also agree with the district court judge that it is appropriate to disallow all the hours claimed for these dates because the appellant did not specify how much time was spent on the nondelegable tasks he performed on those dates. Accordingly, we modify the addendum initial decision to find that 6.6 hours claimed for February 18, 2004, June 25, 2004, and September 23, 2004, should be disallowed as time spent on clerical tasks.

> *We modify the addendum initial decision to disallow 23.8 hours for time spent on the attorney fee petition pertaining to the appellant's adverse action appeal.*

¶28 The administrative judge allowed the balance of the claimed hours for 2001-2005, finding that the appellant's counsel's time reviewing the Board orders, preparing the compliance petition, and telephoning the agency were appropriate activities, and that the amount of time spent on these activities was reasonable. AID at 11. The administrative judge also found that the current fee motion adequately documented the time spent. AID at 11-12.

¶29 Although the agency does not challenge the fee award as it concerns the first period of representation, based on our review of the record, we find that the award must be reduced. The district court's remand order directing the Board to award attorney fees encompassed only those hours reasonably spent on the

compliance proceeding before the Board; however, it appears that some of the claimed hours for this period were not spent on the compliance proceeding. In particular, the documentation supporting the appellant's fee petition shows that he requested fees for time spent on the attorney fees motion that he initially filed in September 2001 and refiled multiple times thereafter. The attorney fees motion and the petition for enforcement are two separate matters, and the appellant is not entitled to fees incurred in connection with the attorney fees motions he filed between 2001 and 2005. RAFF, Tab 26 at 4, 6-7, 9, 15; *see* RAFF, Tab 29 at 12-14, Tab 30 at 89-91, Tab 31 at 31-32, Tab 70 at 20-25. Consequently, we modify the addendum initial decision to disallow a total of 23.8 hours as time spent on the attorney fees motion on the following dates: September 15, 2001 (1.6 hours);[15] October 30, 2001 (.4 hours);[16] July 30, 2002 (.3 hours);[17] October 8,

---

[15] The September 15, 2001 entry indicates that a portion of the 1.6 hours claimed for this date was spent preparing the "motion for enforcement." RAFF, Tab 26 at 4. Although time spent on the petition for enforcement is allowable, we are unable to determine how much time was spent on the compliance proceeding, and, therefore, we find it appropriate to disallow the entire 1.6 hours claimed for September 15, 2001. In any event, based on the timing of the work-two days before the appellant filed his attorney fees motion--and the documentary evidence cited in support of this request, RAFF, Tab 30 at 89-91 (the appellant's motion for attorney fees and costs), the term "motion for enforcement", as set forth in this entry, appears to refer to the motion for attorney fees that the appellant filed on September 17, 2001.

[16] The October 30, 2001 entry indicates that a portion of .4 hours claimed for this date was spent reviewing the matter and preparing objections to discovery. RAFF, Tab 26 at 4. Although arguably allowable, we are unable to determine how much time was spent on those matters, and, therefore, we find it appropriate to disallow the entire .4 hours claimed. In any event, the record evidence indicates that the discovery referenced in this entry pertained to the attorney fees proceeding. RAFF, Tab 29 at 29-31.

[17] In the July 30, 2002 entry the appellant claims .3 hours for preparing a refiled petition. RAFF, Tab 26 at 6. Although the entry does not identify the nature of the petition, the record evidence indicates that the appellant is referring to an attorney fees petition that he refiled on July 30, 2002. RAFF, Tab 31 at 31-32; Tab 40 at 17 n.1.

2002 (6.4 hours);[18] October 9, 2002 (8.0 hours); April 22, 2003 (5.4 hours);[19] and April 29, 2004 (1.7 hours). RAFF, Tab 26 at 4, 6-7, 9, 15; *see* RAFF, Tab 29 at 12-14, Tab 30 at 89-91, Tab 31 at 31-32, Tab 70 at 20-25.

¶30    We find that the remaining 239.5 hours claimed for the period from 2001 and 2005 are reasonable. Accordingly, we find that the lodestar amount for this period is $59,875 (239.5 hours multiplied by the $250 hourly rate).

Reasonableness of claimed hours: 2010-2015

¶31    We consider, moreover, the reasonableness of the 242.4 hours during the period from February 4, 2010 to June 15, 2015, that were claimed in the appellant's current fee petition. RAFF, Tab 26 at 17-20, Tab 69. These hours comprise the following: 91.6 hours from February 4 through September 6, 2010; 82 hours from November 10, 2010, through April 14, 2012; and 68.8 hours from March 31 through June 11, 2015.[20] RAFF, Tab 26 at 17-20, Tab 69.

¶32    The administrative judge allowed all of these hours. AID at 9-12. On review, the agency argues that the administrative judge exceeded the scope of the district court's remand order by considering that time spent on the current fee petition began in 2010, rather than during the appellant's compliance litigation before the Board, i.e., 2001 through 2005. RPFR, Tab 7 at 18-19. In the

---

[18] The time spent drafting an interrogatory response to the agency is not allowable because it pertained to the appellant's motion for attorney fees incurred in his adverse action appeal. RAFF, Tab 70 at 20-25.

[19] The appellant claims that he is entitled to fees for time spent researching the law on the reasonableness of attorney fees because this work helped lead to a substantial compliance recovery; however, he does not explain how this work was related to the compliance proceedings. RAFF, Tab 26 at 9. Because this time was spent on the motion for attorney fees incurred in his adverse action appeal and not on the compliance proceedings before the Board, we disallow it.

[20] In its cross petition for review, the agency states that appellant's counsel filed a "Billed Hours Summary Page" during the proceeding below, in which he claimed 71.4 hours for work performed before the administrative judge after the matter was remanded by the district court. RPFR File, Tab 7 at 19, n.10. We were unable to locate this document in the record.

alternative, the agency argues that, even if the administrative judge could have considered the time spent on the current fee petition during and since 2010, the number of hours claimed by the appellant for preparing and pursuing the current fee petition is "patently unreasonable" and includes a significant amount of time spent on duplicative, if not identical, work. RPFR File, Tab 7 at 19-20. In that regard, the agency notes that the current fee petition was first prepared in 2007 and revised slightly in 2010 when the appellant pursued attorney fees in U.S. district court.[21] *Id.* at 20; RAFF, Tab 63 at 4-13, 66-85. The agency asserts that it therefore was unnecessary for counsel to spend additional time to prepare the current fee petition. RPFR File, Tab 7 at 20.

¶33     We disagree with the agency's contention that the administrative judge erred in awarding fees for the time spent litigating the fee petition. An appellant is entitled to compensation for reasonable fees incurred in connection with a successful attorney fee petition. *See, e.g., Guy v. Department of the Army*, 118 M.S.P.R. 45, ¶ 23 (2012); *Driscoll*, 116 M.S.P.R. 662, ¶ 30. Because no hearing was held on the attorney fees motion, however, we need not defer to the administrative judge's determination that all of the claimed hours are reasonable. *Driscoll*, 116 M.S.P.R. 662, ¶ 30 (citing *Howard v. Office of Personnel Management*, 79 M.S.P.R. 172, ¶ 7 (1988)). Accordingly, we have thoroughly reviewed the relevant documentary evidence to determine if the claimed hours are reasonable. We address separately each period for which these hours are claimed.

        *February 4 through September 6, 2010*

¶34     The appellant claims 12.8 hours for researching and preparing his current fee petition,[22] 18.8 hours for researching and preparing his August 2, 2010

---

[21] The appellant also revised his fee petition in 2008 and 2009. RAFF, Tab 63 at 20-35, 42-60.

[22] RAFF, Tab 26 at 17-18 (claiming 2.4 hours for June 24; .8 hours for June 25; .5 hours for June 26; .4 hours for June 27; .4 hours for July 7; .5 hours for July 9; .8 hours for July 10; .6 hours for July 11; and 6.4 hours for July 12, 2010).

supplement to the fee petition,[23] and 20.6 hours for preparing the following: a reply to the agency's response to the current fee petition, in which he moved to strike the agency's response as untimely; and a reply and supplemental reply to the agency's response to his motion to strike the agency's response.[24] RAFF, Tab 26 at 17-19; RAFF, Tabs 1, 5, 7, 9, 11. In assessing the reasonableness of the amount of time spent on these submissions, we have considered the level of complexity of the issues they address and the amount of time necessary to review the record. We also have compared the appellant's current fee petition with those that he filed during the earlier district court proceedings to determine the agency's contention that it was unnecessary for the appellant to spend any additional time preparing it. RAFF, Tab 63 at 4-13, 20-35, 42-60, 66-85; AFF, Tab 1.

¶35 A significant portion of the appellant's current fee petition is the same as the January 4, 2010 fee petition he filed during the district court proceedings. *Compare* AFF, Tab 1 at 4, 10-27, *with* RAFF, Tab 63 at 66-85. Several pages are not, however, and we find that the 12.8 hours claimed for researching and preparing the current fee petition are reasonable, given the extremely lengthy and complex procedural history of this case, which is set forth in detail in the current fee petition, along with numerous references to the relevant case law. AFF, Tab 1 at 5-10. As for the 18.8 hours claimed for time spent on the August 2010 supplement to his current fee petition, and the 20.6 hours spent on the replies to the agency's response to his fee petition, we also find that the amount of time spent on these submissions is reasonable, given the complexity of this case and the amount of legal research reflected by the citations. Thus, we find that the

---

[23] RAFF, Tab 26 at 18-19 (claiming 2.5 hours on July 29; 2.6 hours on July 31; 4.1 hours on August 1; and 9.6 hours on August 2, 2010).

[24] RAFF, Tab 26 at 19 (claiming 6.2 hours on August 24; 9.8 hours on August 25; 3.8 hours on August 31; and .6 hours on September 6, 2010).

administrative judge properly allowed the claimed hours pertaining to these submissions.

¶36    The appellant also claims 3 hours during July 2010 for time spent reviewing the file, drafting letters and emails to agency counsel, and reviewing the acknowledgment order and the designation of agency representative.[25]   RAFF, Tab 26 at 18.  We find that this claimed time is reasonable.

> *We modify the addendum initial decision to disallow 22.2 hours claimed for time spent during the district court proceedings.*

¶37    We further find, however, that 22.2 hours claimed for February 2010 must be disallowed.  RAFF, Tab 26 at 17.  As previously discussed, pursuant to the district court's March 31, 2015 remand order, the appellant is entitled to fees for time reasonably spent during the Board compliance proceedings.  2015 Compliance Fee Decision at *5.  The court's order did not encompass time spent pursuing either the appellant's compliance matter or the attorney fees motion in district court.  The appellant's January 4, 2010 motion for attorney fees incurred in the removal and compliance proceedings was pending before the district court until June 24, 2010, when the court modified its earlier 2010 fee decision to exclude attorney fees for work performed before the Board.  Modifying Decision at *3.    Because the attorney fees matter was pending in district court in February 2010, we modify the addendum initial decision to disallow 22.2 hours claimed for that time.[26]

---

[25] RAFF, Tab 26 at 18 (claiming 2.2 hours for July 3; .2 hours for July 12; .2 hours for July 16; and .2 hours for July 23, 2010).

[26] The description of services for February 2010, as set forth in the list of claimed hours that the appellant submitted in support of his current fee petition, also demonstrates that these hours were spent on the earlier district court proceedings.  AFF, Tab 5, Ex. 115 at 3-4.  Notably, the description of services for February 2010 that the appellant submitted to the Board following the district court's 2015 Compliance Fee Decision differs markedly from that set forth in the appellant's current fee petition submission.  *Compare* AFF, Tab 5, Ex. 115 at 3-4, *with* RAFF, Tab 26 at 17.  In particular, the appellant's earlier submission indicates that the claimed hours were spent drafting a reply to the agency's objection to his attorney fees motion and cites an exhibit that the

*We modify the addendum initial decision to disallow as unnecessary 10.2 of the 14.2 hours spent on the exhibits to the appellant's fee petition.*

¶38 We also find that most of the 14.2 hours claimed for time spent organizing, preparing, and filing exhibits on July 12-14 and August 1, 2010, should be disallowed.[27] RAFF, Tab 26 at 18. With the supplement to his current fee petition, the appellant filed more than 100 exhibits totaling more than 1,700 pages. AFF, Tab 5, Exhibits (Exs.) 10-116. The vast majority of these documents are irrelevant to his current fee petition and do not advance the processing of this case. For example, one of the appellant's exhibits consists of various published articles on discrimination totaling more than 80 pages. *Id.*, Ex. 87. Accordingly, we modify the addendum initial decision to disallow as unnecessary all but 4 hours of the 14.2 hours spent on these exhibits.

¶39 In sum, we find that 59.2 of the 91.6 hours claimed for this period are reasonable. Therefore, we find that the lodestar amount for this period is $14,800 (59.2 hours multiplied by the $250 hourly rate).

*November 10, 2010, through April 14, 2012*

¶40 We next consider the reasonableness of the 82 hours claimed for the period from November 10, 2010 through April 14, 2012. RAFF, Tab 26 at 19-20. A total of 62.9 hours of the time claimed was spent researching and preparing the following submissions: the appellant's petition for review of the initial decision (34.9 hours);[28] three notices of supplemental authority (3.6 hours);[29] and the

---

agency filed during those district court proceedings, whereas the more recent submission eliminates any reference to the agency and its exhibits. Thus, it appears that after the district court issued its remand order, the appellant may have changed the description of services for February 2010 to make it less apparent that the claimed hours were spent on the district court proceedings.

[27] RAFF, Tab 26 at 18 (claiming 5 hours for July 12; 1.4 hours for July 13; 4.4 hours for July 14; and 3.4 hours for August 1, 2010).

[28] RAFF, Tab 26 at 19 (claiming 3.2 hours for November 10 and 2.8 hours for November 12, 2010; 1.2 hours for January 7; .6 hours for January 8, .8 hours for January 9; 7.5 hours for January 11; 1.7 hours for January 12; 7.4 hours for January 13; and 9.7 hours for January 14, 2011).

appellant's response to the Board's August 11, 2011 timeliness order (24.4 hours).[30]  *Id.*, *see* A-6 PFR File, Tabs 3, 6-8, 12.  The agency does not offer any specific objections to the reasonableness of these hours, all related to litigating the petition for review of the initial decision.  *See generally*, RPFR File, Tab 7.  We have reviewed the work product associated with these hours, and we find that the time spent on these submissions is reasonable.

¶41    The remaining 19.1 hours claimed for this period consist of time spent in November 2010 and April 2012 on matters that were not successful.  Specifically, the appellant claims 7.2 hours for time spent on November 15, 2010, for services that he describes in his list of claimed hours as follows:  "Appellant's Request For a Specific Ruling From the Administrative."  RAFF, Tab 26 at 19.  The appellant is apparently referring to a submission dated November 16, 2010, in which he requested a "specific ruling" from the administrative judge on his August 25, 2010 motions to enforce the settlement agreement and strike the agency's response to his attorney fees petition, and his September 6, 2010 request to file a "full response" to the agency's replies to his current fee petition.  The administrative judge rejected this submission as untimely because it was received after the November 10, 2010 initial decision was issued.

¶42    The appellant also claims 11.9 hours from April 6 to April 14, 2012, for time spent on his request to reopen the Board's April 4, 2012 final order denying his petition for review of the initial decision.[31]  RAFF, Tab 26 at 20.  The appellant argued that reopening the final order was necessary to prevent a manifest injustice and a denial of due process because the Board's April 4, 2012

---

[29] RAFF, Tab 26 at 19-20 (claiming 1 hour for August 4; 1.4 hours for August 5; and 1.2 hours for August 8, 2011).

[30] RAFF, Tab 26 at 20 (claiming .4 hours for August 10; 1.4 hours for August 21; 3.4 hours for August 26; 4.2 hours for August 27; 2.8 hours for August 28; 2.6 hours for August 29; and 9.6 hours for August 30, 2011).

[31] RAFF, Tab 26 at 20 (claiming 1.6 hours for April 6; 2.1 hours for April 12; 1.1 hours for April 13; and 6.4 and .7 hours for April 14, 2012).

final order did not address his August 25, 2010 motion to enforce the parties' 2004 settlement agreement. The Office of the Clerk of the Board, however, issued a letter to the appellant indicating that the order issued in MSPB Docket No. PH-0752-94-0233-A-6 was the Board's final decision and thus the appellant had no further right to review of the appeal by the Board.

¶43    Although both the November 2010 and the April 2012 requests were unsuccessful,[32] it is premature at this stage of the analysis to disallow the hours spent on these requests due to lack of success. As the Board explained in *Driscoll*, in calculating the lodestar amount, the key inquiry is whether the claimed hours were reasonably expended. *Driscoll*, 116 M.S.P.R. 662, ¶ 10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). In the second phase of the analysis, the lodestar may be adjusted upward or downward based on other considerations, including the crucial factor of the "results obtained." *Id.* (citing *Hensley*, 461 U.S. at 434). Thus we first must determine whether the hours devoted to these requests were reasonably spent without regard to whether the requests were successful. *Id.*, ¶ 16. The agency has not offered any specific objections to the reasonableness of the time spent on these requests, and we find that the time spent on them was reasonable. Accordingly, we find that the administrative judge properly allowed all 82 hours claimed for this period. Therefore, the lodestar for this period is $20,500 (82 hours multiplied by the $250 hourly rate).

*March 31 through June 11, 2015*

¶44    We next consider the reasonableness of the 68.8 hours claimed for litigating the current fee petition following the district court's 2015 compliance fee order and remand order. RAFF, Tab 69. The appellant's billing statement

---

[32] Because the appellant submitted these documents after the issuance of the initial decision by the administrative judge in MSPB Docket No. PH-0752-94-0233-A-6 and after the issuance of the Board's decision in MSPB Docket No. PH-0752-94-0233-A-6, respectively, the submissions were not placed in the record in this matter.

indicates that almost all of the requested time was spent researching and revising the current fee petition and preparing a reply to the agency's response in opposition to it.[33]  *Id.*, *see* RAFF, Tabs 16, 59.  The agency does not offer specific objections to the reasonableness of the hours claimed for this period.  We find that 68.8 hours is reasonable, and therefore we allow it.  Thus, we find that the lodestar amount for this period is $17,200 (68.8 hours multiplied by the $250 hourly rate), and for the period from 2010 through 2015 is $52,500 ($14,800 + 20,500 + $17,200).

<u>The administrative judge correctly found that reducing the lodestar amount for the period from 2001 to 2005 is inappropriate.</u>

¶45       Having determined the lodestar amount, we now consider whether to adjust it upward or downward.  When an appellant achieves only partial or limited success, a downward adjustment is generally warranted.  *Driscoll*, <u>116 M.S.P.R. 662</u>, ¶ 28.  Conversely, in a case in which the party seeking fees obtains "substantial" success, despite not succeeding on every claim or issue, he should recover a fully compensatory fee, encompassing all hours reasonably spent on the litigation.  *Hensley*, 461 U.S. at 435.

¶46       In its cross petition for review, the agency reasserts that the lodestar amount should be adjusted downward because the appellant achieved only "limited success" in the compliance action.  RPFR File, Tab 7 at 14-18; RAFF, Tab 14 at 14-15.  In support of this argument, the agency notes, as it did below, that the district court judge reduced the lodestar by 85 percent based on the appellant's limited success and his counsel's conduct during the litigation, and it contends

---

[33] The list of claimed hours indicates that only 2.4 hours of the time claimed for this period was not spent on the revised fee petition or the appellant's reply to the agency's response to the fee petition.  RAFF, Tab 69 at 4-5 (claiming 1.2 hours for April 20 for checking on the status of the case and preparing a notice reminding the Board of the district court's remand order; .3 hours for May 5 for preparing a letter to the Clerk of the Board transmitting the appellant's prior correspondence to the Board; and .9 hours for May 28 for reviewing and responding to the agency's motion for an extension of time to reply to the appellant's fee petition).

that a similar reduction is warranted here.[34]  RPFR File, Tab 7 at 17-18; RAFF, Tab 14 at 15-16.

¶47    The administrative judge rejected this argument in the addendum initial decision, finding that adjusting the lodestar was not warranted because the appellant obtained a "significant amount" of the relief sought.  AID at 11.  The agency challenges this finding on review, asserting that the administrative judge failed to explain which of the appellant's claims were successful so as to justify his decision to forgo a lodestar reduction.  RPFR File, Tab 7 at 18.  The agency further argues that, given the appellant's limited success in the compliance proceedings, the administrative judge erred by failing to adjust the lodestar downward.  *Id.*  The agency requests that, if it finds the current fee petition timely, the Board remand the case to the administrative judge to determine an appropriate reduction of the fee award.  *Id.*

¶48    We agree with the agency that the administrative judge did not adequately explain why he determined that a reduction in the lodestar was inappropriate.  An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests.  *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980).  We find that, pursuant to *Spithaler*, the administrative judge should have included his reasons for concluding that the appellant obtained a significant amount of the relief sought.

¶49    Nonetheless, we decline to remand the case to the administrative judge to consider reducing the lodestar amount.  The record in this case is fully developed, and in the interest of the efficient use of judicial resources, we will determine whether a downward adjustment of the lodestar is warranted without a remand.

---

[34] During the proceedings below, the agency argued that the lodestar amount should be reduced by 75 percent.  RAFF, Tab 14 at 15.

¶50     To decide whether reducing the lodestar amount for the period from 2001 through 2005 is warranted, we have reviewed the relevant evidence to determine the appellant's degree of success in the compliance matter. As previously noted, during the compliance proceedings before the Board, the appellant argued that the agency had failed to meet its back pay obligations from February 23, 1992, through June 24, 1996. RAFF, Tab 36 at 75. In particular, the appellant argued that the back pay award should include the monetary value of fringe benefits, such as health benefits, retirement plan contributions, and "Social Security Match Contributions"; however, the agency had failed to include the value of such fringe benefits in calculating the back pay award. RAFF, Tab 34 at 42-43.

¶51     During the compliance proceedings before the Board, the agency argued that it had complied with the Board's July 19, 2001 order directing it to pay the appellant back pay for the constructive suspension period[35] and that, therefore, the Board should dismiss the appellant's petition for enforcement regarding that time period. RAFF, Tab 38 at 92-93. As for the appellant's argument that the agency failed to comply with the Board's June 12, 1996 order reversing his removal by failing to pay interest and back pay for the period from his removal through the date of the Board's order, the agency argued that the appellant's petition for enforcement of that order should be dismissed as untimely because he did not raise the compliance issue until March 16, 2001. RAFF, Tab 44 at 22-23. Thus, during the proceedings before the Board, the agency essentially argued that the appellant was not entitled to any relief in the compliance matter, whereas the appellant argued that he was entitled to a back pay award that included the monetary value of fringe benefits.

---

[35] In support of its claim, the agency provided documentation showing that it had issued checks to the appellant in the amounts of $6,812.87 in back pay and $21,568.70 in interest for the period of the constructive suspension. RAFF, Tab 38 at 97-98. The appellant returned the checks to the agency, claiming that these payments were insufficient. RAFF, Tab 36 at 47-50.

¶52		As previously noted, during the district court proceedings, the agency abandoned its timeliness defense and acknowledged that it owed the appellant back pay for the period following his removal, *see Estate of Schultz*, No. 05-1169, 2001 WL 1115209 at \*1, and the district court found that the total amount of back pay (including health insurance) and interest owed to the appellant was $131,957.16. *See Estate of Schultz*, 2008 WL 4279811, at \*2. This amount comprised $47,246.69 for back pay and allowances, $52,315.73 in interest, $198.23 for a retirement deduction, and $32,196.51 for the amount that the agency would have contributed to his health care benefit except for his removal. *Id.* Given the relief that the appellant sought during the Board compliance proceedings, i.e., a back pay award that included the monetary value of the fringe benefits, and interest and back pay for the period from his removal through the date of the Board's order reversing his removal, we find that the district court order demonstrates that the appellant obtained substantial success in his compliance appeal. Therefore, we find that reducing the lodestar amount for the period from 2001 through 2005 is not warranted. Accordingly, we award the appellant $59,875 in attorney fees for that period.

<u>We modify the addendum initial decision to reduce the lodestar amount for the period from 2010 to 2015.</u>

¶53		We now consider whether to adjust the lodestar amount for the period in which the appellant litigated his current fee petition before the Board, i.e., 2010 to 2015. As discussed above, the appellant spent 19.1 hours during this period on matters that were not successful. We find it appropriate to reduce the lodestar for the 2010-2015 timeframe by $4,775 (19.1 hours multiplied by the $250 hourly rate) to account for the appellant's lack of success on these matters, thereby resulting in a lodestar of $47,725. *See Guy,* [118 M.S.P.R. 45](#), ¶ 20 (finding that, inequitably adjusting attorney fees to account for a prevailing party's partial or limited success, the tribunal may adjust the lodestar downward by identifying

specific hours that should be eliminated or reducing the overall award to account for the limited degree of success).

¶54 Further, the appellant requested attorney fees at an hourly rate of $880 but was awarded fees at a rate of $250. In addition, the appellant requested fees for work performed in both the removal appeal and the Board compliance proceeding, AFF, Tab 1 at 24; however, the Board dismissed his attorney fees petition for work attributable to the removal appeal as untimely filed without good cause shown for the delay, and the district court affirmed the Board's dismissal. RAFF, Tab 1 at 1-2. Given these circumstances, we find that a downward adjustment in the lodestar for the period that the appellant spent litigating the fee petition is appropriate to account for his only partial success in litigating the attorney fee petition.

¶55 Because it is not practicable to segregate the hours devoted to the appellant's unsuccessful claims—attorney fees attributable to the removal appeal, and arguments pertaining to the hourly rate—we find that a percentage reduction is appropriate in this case. Based on our review of the record, we find that a 20 percent reduction is equitable. Accordingly, we reduce the lodestar amount for time spent litigating the current fee petition to $38,180 (.80 multiplied by $47,725) and modify the addendum initial decision to award $98,055 in attorney fees ($59,875 for 2001-2005 and $38,180 for 2010-2015) and $2,678.89 in costs for a total of $100,733.89.

## ORDER

¶56 We ORDER the agency to pay the attorney of record $100,733.89 in fees and costs. The agency must complete this action no later than 20 days after the date of this decision. *See generally* title 5 of the United States Code, section 1204(a)(2) (5 U.S.C. § 1204(a)(2)).

¶57 We also ORDER the agency to tell the appellant and the attorney promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. We ORDER the appellant and the

attorney to provide all necessary information that the agency requests to help it carry out the Board's Order. The appellant and the attorney, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶58    No later than 30 days after the agency tells the appellant or the attorney that it has fully carried out the Board's Order, the appellant or the attorney may file a petition for enforcement with the office that issued the initial decision on this appeal, if the appellant or the attorney believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant or the attorney believes the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. *See* 5 C.F.R. § 1201.182(a).

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.